UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ERICK LEVAR ADAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2:16-cr-00063-GZS-1 |
| | ) | 2:21-cv-00139-GZS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. (Motion, ECF No. 286.)  Following a guilty plea, Petitioner was convicted of one count of conspiracy to distribute and possess with intent to distribute controlled substances and one count of possession of a firearm by a convicted felon; the Court sentenced Petitioner to 300 months in prison.  (Judgment, ECF No. 231.)  The First Circuit affirmed. *United States v. Adams*, 971 F.3d 22 (1st Cir. 2020).

Petitioner alleges unreasonable search and seizure, sentencing error, due process violations, and ineffective assistance of counsel.  The Government requests dismissal. (Response, ECF No. 294.)

Following a review of the record and after consideration of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request and dismiss Petitioner's motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

In 2014, an FBI informant produced a photograph of a man going by the name "X" who had allegedly been arrested on multiple occasions in Rhode Island and who was now allegedly trafficking in cocaine and heroin in the Biddeford area.  (First Hotel Warrant at 4, ECF No. 73-3.)  A Rhode Island officer and other individuals identified the man in the photograph as Petitioner.  (*Id.*)  On December 4, 2014, while investigating Petitioner and tracking his rental vehicle, state law enforcement officers stopped Petitioner for a traffic infraction near Sanford, Maine and arrested him for operating the vehicle without a valid license.  (Suppression Order at 2, ECF No. 137.)  Petitioner had $500 in mostly small bills. (*Id.*)  After drug sniffing dogs alerted to the presence of drugs, the officers searched the vehicle and found three mobile phones, two screws, and the cut corner of a plastic bag.  (*Id.* at 2–3.)  After obtaining a search warrant for the vehicle, the officers searched the vehicle and located two more mobile phones.  (*Id.*)  Approximately one month later, in January 2015, law enforcement officers obtained warrants to search the mobile phones. (Suppression Order at 3–4; Phone Warrant Affidavit, ECF No. 67-1)

In the fall of 2015, Biddeford Police began receiving complaints about unusually heavy traffic at a residence located at 60 Cutts Street in Biddeford.  (First Hotel Warrant at 5.)  In October and November 2015, a cooperating defendant, CI # 4707, told law

---

[1] The facts of the crime are recounted below largely according to the law enforcement affidavits underlying the warrant applications for which Petitioner challenges the asserted probable cause.  Law enforcement also collected considerable additional evidence that was not discussed in detail in the subsequent warrant applications but presumably would have been available to the Government at trial if Petitioner had not pled guilty, including evidence from an apartment in Connecticut leased by Petitioner and nine other confidential sources of information.  (Presentence Investigation Report ¶¶ 6–22.)

enforcement officers that Petitioner had been dealing drugs in Biddeford, primarily at 60 Cutts Street, and that Todd Milliken, and Obrian Barrett worked for him. (*Id.*) Officers and CI # 4707 recorded a phone call with a man the CI identified as Milliken and completed a controlled purchase of heroin from Barrett while Milliken was present at the residence. (*Id.* at 5–6.)

Later in November 2015, another cooperating defendant, CI # 4716, notified officers about the activities of Petitioner, Milliken, and Barrett. (*Id.* at 6.) In December 2015, officers and CI # 4716 made a recorded phone call with a man the CI identified as Milliken and completed a controlled purchase of cocaine base and heroin from Milliken at the residence. (*Id.* at 6–7.) A few days later, officers and CI # 4716 recorded a phone call with a man the informant identified as Petitioner and completed a controlled purchase of heroin and cocaine base from a man the informant asserted was Petitioner. (*Id.* at 7.)

In December 2014 and early January 2015, another informant, CI #16-1, told law enforcement that Petitioner spent some time overseeing drug distribution activities at 60 Cutts Street but had recently been spending the night and keeping belongings at a hotel in Saco. (*Id.* at 7–8.) The officers began surveilling the hotel, monitored the locations of certain cell phone numbers the suspects had used in the past, and obtained a guest list for the hotel, which contained the name "Barrett/Brian" in one of the rooms. (*Id.* at 8–9.)

On January 6, 2016, the officers obtained a no-knock warrant for the hotel room. (*Id.* at 1–2.) The same night, they observed Petitioner leave the hotel room, retrieve a black bag from a vehicle, and return to the room with Milliken. (Second Hotel Warrant at 6, ECF No. 73-4.) Officers executed the no-knock warrant. (*Id.*) According to the officers,

3

Milliken was found just inside the door with a handgun at his waist and a substance that looked like cocaine base. (*Id.*) Petitioner was found near the bathroom attempting to break a mobile phone and possibly dispose of a substance that looked like cocaine base. (*Id.*)

After obtaining a search warrant for the hotel room and the vehicle, (*id.* at 1–2), a search of the black bag and the hotel room revealed 32.5 grams of cocaine hydrochloride, 6.3 grams of heroin, 102.8 grams of cocaine base, and roughly $26,000. (Prosecution Version at 2, ECF No. 153; Storage Unit Warrant at 7, ECF No. 73-5.) The glovebox of the vehicle contained paperwork for a storage unit. (Storage Unit Warrant at 7.)

On January 7, 2016, after obtaining surveillance video showing Barrett accessing the storage unit the day before, the officers obtained a search warrant for the storage unit. (*Id.* at 1–2, 7–8.) A search of the unit revealed a cloth bag, a shoebox, and a plastic tote; within the shoebox and plastic tote were 68.9 grams of cocaine hydrochloride, 50.1 grams of heroin, 684.6 grams of cocaine base, and four firearms. (Prosecution Version at 2.) The lock on the storage unit matched a key found in Petitioner's jeans in the hotel room, and surveillance video from the storage facility showed Petitioner accessing the unit recently. (*Id.* at 2–3.)

In April 2016, Petitioner was indicted for conspiring to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). (Indictment, ECF No. 19.) A superseding indictment changed the drug quantities alleged for that count and added two counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(c), and one

count of conspiracy to possess firearms in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(o). (Superseding indictment, ECF No. 43; Corrected Superseding Indictment, ECF No. 58.)

In July 2016, Petitioner filed five motions to suppress evidence. (Motions to Suppress, ECF Nos. 65–69.) Petitioner alleged Fourth Amendment and other constitutional violations and challenged: (1) the circumstances of a photographic identification of Petitioner by CI # 4716; (2) the probable cause to seize the cell phones from Petitioner's rental vehicle, (3) the probable cause to search the cell phones, (4) the probable cause to search the storage unit, and (5) the probable cause justifying the "no knock" aspect of the first hotel room warrant. (*Id.*) After briefing and a hearing on the motions, in January 2016, the Court reserved ruling on the first motion regarding the photographic identification and denied the other motions to suppress evidence. (Order on Motions to Suppress, ECF No. 88.) In May 2017, Petitioner filed a sixth motion to suppress evidence collected pursuant to a warrant and search of an apartment in Connecticut; the Court denied the motion. (Motion to Suppress, ECF No. 129; Order on Motion to Suppress, ECF No. 137.)

In June 2017, Petitioner pled guilty to the conspiracy to distribute drugs charge and the gun possession charge conditional on his right to appeal from the Court's suppression orders. (Change of Plea Hearing, ECF No. 155.) In exchange for Petitioner's conditional guilty plea, the Government agreed to seek dismissal of the other charges, recommend a three-level guideline reduction for acceptance of responsibility, and recommend a sentence of 180–300 months imprisonment. (Plea Agreement, ECF No. 154.)

5

Approximately one month later, Petitioner moved to withdraw his guilty plea. (Motion to Withdraw Plea, ECF No. 161.)  After briefing and a hearing, the Court denied the motion.  (Order, ECF No. 177.)  In December 2017, Petitioner filed a motion to reconsider the Court's suppression orders, asserted a new challenge to the probable cause supporting the hotel arrest warrant, and sought a *Franks* hearing.[2]  (Motion to Reconsider, ECF No. 190.)  Petitioner asserted that the Government had failed to disclose that CI # 4716 had continued to use heroin while working with law enforcement and was arrested for drug possession in late December 2015 and terminated as an informant.  (*Id.*)  After briefing and a hearing on the motion, the Court denied Petitioner's requests.  (Order, ECF No. 203.)

In May 2018, the Court sentenced Petitioner to 300 months in prison.  (Judgment, ECF No. 231.)  Petitioner appealed, challenging the Court's suppression orders, the order denying reconsideration of the suppression orders, and the order denying the motion to withdraw the guilty plea; in August 2020, the First Circuit affirmed.  *United States v. Adams*, 971 F.3d 22 (1st Cir. 2020).

Petitioner subsequently filed the section 2255 motion.  (Motion, ECF No. 286.)

---

[2] In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that defendants may challenge the sufficiency of a warrant if they can make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that the "false statement [was] necessary to the finding of probable cause . . . ."  *Id.* at 155–56.

DISCUSSION

## A.   Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

*"[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127–28.

7

Procedural default is an affirmative defense.  *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010).  The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte.*"  *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if a petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness."  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  A petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim.  *Id.* at 697.  If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail."  *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion."  *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also*

*Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

## B.   Noncognizable and Procedurally Defaulted Claims

Petitioner raises various challenges to the law enforcement activities that resulted in his arrest and prosecution, including the sufficiency of the evidence establishing probable cause to support various searches and seizures. (ECF Nos. 286-3, 286-5, 286-6, 286-7.) Petitioner also characterizes some of the arguments as malicious prosecution and false

arrest claims, reasoning that if probable cause for his arrest and prosecution was lacking, the Government's actions were necessarily malicious.

The essence of Petitioner's arguments is that the law enforcement searches and seizures were unreasonable because they were not supported by probable cause to believe a crime had been committed or that evidence of a crime would be discovered. The claims are not cognizable on postconviction review given the limitations on the scope of the Fourth Amendment exclusionary rule as articulated by the Supreme Court in *Stone v. Powell*, 428 U.S. 465 (1976). *See Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (concluding that "free-standing Fourth Amendment claims cannot be raised in collateral proceedings under either § 2254 or § 2255"); *Brock v. United States*, 573 F.3d 497, 500 (7th Cir. 2009) ("This Court has determined that the principles of *Stone* apply equally to § 2255 motions"); *United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993) ("Fourth Amendment violations are not reviewable in a § 2255 motion when the federal prisoner has had a full and fair opportunity to litigate the Fourth Amendment claim"); *United States v. Hearst*, 638 F.2d 1190, 1196 (9th Cir. 1980) (same); *Arroyo v. United States*, 195 F.3d 54, 54–55 & n.1 (1st Cir. 1999) (noting that "[t]he Supreme Court has hinted that *Stone v. Powell* applies to section 2255 petitions" but declining to resolve the issue).[3]

---

[3] Even if Petitioner's Fourth Amendment claims were cognizable on postconviction review, *see Baranski v. United States*, 515 F.3d 857, 860 (8th Cir. 2008) ("conclud[ing] that *Stone* does not bar" Fourth Amendment claims in § 2255 motions), the claims would still be unreviewable here because the arguments Petitioner preserved before sentencing and raised on appeal were considered and rejected by the First Circuit, which rulings are now the law of the case, *see Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996), and the arguments Petitioner did not preserve before sentencing and raise on appeal are procedurally defaulted, *see Berthoff*, 308 F.3d at 127–28, and there is no reason to excuse the default because Petitioner has not established cause and prejudice or actual innocence. *See infra*.

Petitioner raises other pre-plea issues, such as alleged deficiencies in the indictment and grand jury procedures, (ECF Nos. 289 at 8; 289-1), but his admission of guilt bars him from challenging those issues.  *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973).  The arguments are also procedurally defaulted because he did not raise them before his plea or on appeal.  Likewise, Petitioner's arguments concerning certain guideline sentencing calculations and sentencing enhancements, (ECF Nos. 286, 286-2, 289 at 7, 289-1 at 6), are also procedurally defaulted for failing to raise them on appeal.

Petitioner has not established cause to excuse the procedural defaults or prejudice from any errors.[4]  Petitioner has asserted actual innocence arguments, (ECF Nos. 286-3; 286-6, 286-7, 289 at 4–5), which can provide a basis to excuse a procedural default.  *See Schlup v. Delo*, 513 U.S. 298, 327 (1995) ("the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence" in order to avoid a procedural bar). Petitioner, however, has not established a sufficient probability that he is actually innocent of the offenses of conviction.

In support of his claim of innocence, Petitioner contends that (1) a recording from CI # 4716's controlled purchase shows that another man present conducted the transaction with the informant, not Petitioner, and (2) law enforcement did not perform field tests to confirm that the substance purchased during that transaction was a controlled substance,

---

[4] To the extent Petitioner's arguments could be construed to raise related ineffective assistance of counsel claims, which can create cause to excuse a procedural default, the arguments lack merit.  *See infra* Part D.

and the lab tests were not completed until after his arrest and the warrant underlying that arrest.  Because Petitioner was evidently aware of all the evidence before his guilty plea, there is no "new evidence" of innocence.  Even if Petitioner could establish that he was unable to discover the evidence through the exercise of diligence before now, and even if the recording confirms Petitioner's assertions, the fact that another person conducted the transaction would not establish a likelihood of innocence given all the other evidence of his guilt which the Government would have been able to produce.  Furthermore, Petitioner's argument regarding law enforcement's failure to conduct a field test would only relate to the issue of probable cause for one warrant, but would not bear on Petitioner's ultimate innocence.  Petitioner's argument instead raises a Fourth Amendment suppression issue, which is not a basis for postconviction relief.  *See supra*.[5]

In sum, Petitioner' primary contention is that he is now aware of evidence that would have supported objections to certain evidence on Fourth Amendment grounds; the cited evidence does not support his claim of actual innocence. The claims are not cognizable on postconviction review and lack merit even if they were cognizable.

## C.   *Rehaif* Claim

Petitioner contends that he is entitled to postconviction relief because he was never asked during his change of plea hearing whether he subjectively knew that he was

---

[5] To the extent Petitioner also relies on the alleged omissions concerning the drug use of CI #4716 to support of his arguments about the lack of probable cause for the hotel search and arrest warrants, given all the other evidence establishing probable cause, the issue was not material to the validity of the warrant. Similarly, given the other evidence establishing guilt, including Petitioner's admissions, even if Petitioner's argument had merit, the record does not suggest a likelihood of Petitioner's innocence.

prohibited from possessing a firearm. (ECF No. 289-1 at 4).   In June 2019, while Petitioner's appeal was pending, the United States Supreme Court decided *Rehaif v. United States*, 139 S. Ct. 2191 (2019).

Under the statutory provision underlying Petitioner's firearm conviction, 18 U.S.C. § 922(g), it is unlawful for certain persons, including individuals with prior felony convictions, *id.* § 922(g)(1), to possess a firearm or ammunition.   The provision contains three elements: (1) a status element (belonging to one of the listed categories of persons), (2) a possession element, and (3) a jurisdictional element (in or affecting commerce). *Rehaif*, 139 S. Ct. at 2196.   Before 2019, courts interpreted "knowingly" in the penalty provision (§ 924(a)(2)) to apply only to the possession element, but under *Rehaif*, "knowingly" also applies to the status element. *Id.* "To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* at 2194.

Petitioner's filings could be construed as an argument that under *Rehaif*, his guilty plea was not voluntary because he was not aware at the time of the plea that the Government not only had to prove that he possessed a firearm or ammunition but also had to prove that Petitioner knew he was a felon at the time of the possession.   A guilty plea is constitutionally valid only if it is voluntarily and intelligently entered. *Brady v. United States*, 397 U.S. 742, 748 (1970).   Because a guilty plea is not intelligently made when the defendant did not receive "real notice of the true nature of the charges," if Petitioner could demonstrate that he, counsel, and the Court misunderstood the essential elements of a

crime, his plea would likely be susceptible to a constitutional challenge.  *See Bousley v. United States*, 523 U.S. 614, 618 (1998).

In general, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced," *Teague v. Lane*, 489 U.S. 288, 310 (1989), but "new substantive rules"—those that "alter the range of conduct or class of persons that the law punishes"—apply retroactively.  *Edwards v. Vannoy*, 141 S. Ct. 1547, 1562 (2021).  Because *Rehaif* more narrowly interpreted the scope of a federal criminal statute, it announced a substantive rule that applies retroactivity on postconviction review.

Even though *Rehaif* "is not *Teague*-barred" and therefore can potentially apply on postconviction review, "there are nonetheless significant . . . hurdles" that a petitioner might have to overcome.  *Bousley*, 523 U.S. at 621.  In general, a claim that was not raised on appeal is procedurally defaulted.  *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *Frady*, 456 U.S. at 167–68; *Bousley*, 523 U.S. at 621–22).  "A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law," *Martinez v. Ryan*, 566 U.S. 1, 10 (2012), or by showing that a miscarriage of justice would occur because, "in light of new evidence, it is more likely than not" that the petitioner is actually innocent of the crime.  *House v. Bell*, 547 U.S. 518, 536–39 (2006) (quotation omitted).

"[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded" the ability to comply with the procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

14

This can occur if government interference made compliance impractical, *see id.*, or if there was constitutionally ineffective assistance of counsel, *see Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991).  Furthermore, if a claim "is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for [the] failure to raise the claim . . . ." *Reed v. Ross*, 468 U.S. 1, 16 (1984).  A petitioner cannot establish that a claim was "not reasonably available to counsel" just because of the perception that "a claim was unacceptable to that particular court at that particular time," *see Bousley*, 523 U.S. at 622–23, but a claim is deemed unavailable when it results from a "clear break with the past" in a new Supreme Court case:

> First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may overturn a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. And, finally, a decision may disapprove a practice this Court arguably has sanctioned in prior cases.

*Ross*, 468 U.S. at 17 (citations, quotations, and modifications omitted).  While it "present[s] a more difficult question" when a claim implicates the third category, "[b]y definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position that this Court has ultimately adopted." *Id.*

Because the Supreme Court "overturn[ed] the long-established interpretation" of § 922(g), which was "used in thousands of cases for more than 30 years," and on which the circuit courts were unanimous, *see Rehaif*, 139 S. Ct. at 2201 (Alito, J. dissenting), Petitioner's procedural default falls within the second *Ross* category.  *See United States v.*

*Garcia*, No. 20-1381, 2021 WL 5994630, at *2 (10th Cir. Aug. 10, 2021).[6] For that reason, the knowledge-of-status issue was not reasonably available to Petitioner's attorney before the district court. Because *Rehaif* was decided while his appeal was pending, however, it was arguably available to Petitioner because he could have asserted the *Rehaif* issue through a supplemental brief before the First Circuit. The Court need not ultimately decide that issue because even if cause to excuse the default exists despite the timing of the First Circuit's decision, Petitioner cannot establish prejudice as a result of any *Rehaif* error.

---

[6] Some courts have questioned the continued vitality of the second *Ross* category after the *Bousley* Court rejected the argument that futility can constitute cause for a procedural default, while noting that the issue in the case was not novel because it was raised (and rejected) in many other cases. *See e.g.*, *Simpson v. Matesanz*, 175 F.3d 200, 212 (1st Cir. 1999); *United States v. Moss*, 252 F.3d 993, 1002 (8th Cir. 2001); *Richardson v. Lemke*, 745 F.3d 258, 274 (7th Cir. 2014). The First Circuit also noted that strict rejection of futility as cause for a procedural default could "encourage[ ] litigants to raise over and over issues seemingly already settled in the circuit." *Brache v. United States*, 165 F.3d 99, 103 (1st Cir. 1999). The Government has sometimes argued, citing *Bousley*, that *Rehaif* claims were available because defendants in other cases raised the issue. More recently, the First Circuit reaffirmed that the *Ross* standard governed a court's assessment whether a claim was unavailable. *See Lassend v. United States*, 898 F.3d 115, 122 (1st Cir. 2018). At least one other circuit court has interpreted *Bousley*'s rejection of futility arguments somewhat narrowly. *See Gutierrez v. Smith*, 702 F.3d 103, 111–12 (2nd Cir. 2012) ("futility may constitute cause where prior state case law has consistently rejected a particular constitutional claim. Futility, however, cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time") (citing *Bousley*) (citation and quotation marks omitted).

Given that *Rehaif* falls within the second *Ross* category, contrary "availability" arguments and supportive cases are unpersuasive. *See e.g.*, *United States v. Bryant*, No. 11 CR 765 (RJD), 2020 WL 353424, at *3 (E.D.N.Y. Jan. 21, 2020) (citing cases in previous decades for conclusion that the knowledge-of-status argument was actually litigated and thus available, but not addressing second *Ross* category or the uniformity of contrary circuit authority). In other words, even if some defendants raised the issue before *Rehaif*, that alone does not prove the knowledge-of-status argument was reasonably available in the face of widespread and longstanding contrary authority at the time of Petitioner's guilty plea. Although the Court in *Bousley* cited as evidence for an argument's availability the fact that other defendants had raised the argument, *Bousley*'s reasoning is distinguishable because in that case the lower authority was more contemporaneous and involved a circuit split, not broad and longstanding authority supporting the same principle. *See United States v. Lowe*, No. 214CR00004JADVCF, 2020 WL 2200852, at *2 (D. Nev. May 6, 2020) ("[Petitioner] can demonstrate cause because the legal basis for his challenge was not reasonably available in light of the broad consensus among the circuit courts before *Rehaif*"). Furthermore, the Court in *Bousley* cited *Ross* without any suggestion that its reasoning was inconsistent with or was intended to overrule the second exemplar category of unavailable claims set forth in *Ross*.

In the context of a guilty plea, to establish prejudice, the petitioner "must show that there is a reasonable probability that, but for [the] errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhar*t, 474 U.S. 52, 59 (1985). Petitioner does not allege that he was unaware of having been convicted of a crime punishable by more than one year in prison. Instead, Petitioner only argues that he was not informed that the Government would have to prove that he subjectively knew that he was prohibited from possessing a firearm. Petitioner's argument is unavailing. *Rehaif* requires that a defendant know that he or she has the status, but nothing requires a defendant also to know that § 922(g) makes it illegal for someone with that status to possess firearms. *See Rehaif*, 139 S. Ct. at 2198 (discussing the maxim that ignorance of the law is no excuse and the failure to distinguish the two kinds of knowledge); *United States v. Minor*, No. 2:17-CR-21-DBH, 2019 WL 7944623, at *1 (D. Me. Oct. 17, 2019) (rejecting a challenge to an indictment for failing to allege that the defendant knew he was prohibited from possessing a firearm because *Rehaif* only requires the Government to show knowledge of the relevant status).

Given the evidence concerning Petitioner's multiple prior convictions and the lack of any assertion that he did not know he was convicted of any offenses punishable by more than one year in prison, there is no reasonable probability that Petitioner's awareness of the knowledge-of-status element under *Rehaif* would have significantly impacted Petitioner's decision to go to trial or plead guilty. The record also lacks any evidence that Petitioner was prejudiced in any other way, including at sentencing. Accordingly, Petitioner was not prejudiced as a result of any *Rehaif*-related issue or error.

17

Petitioner's actual innocence claims do not appear to be relevant to the *Rehaif* issue. While a narrowed interpretation of a criminal statute can create a situation where a defendant was actually innocent of the crime as properly interpreted, *see Bousley*, 523 U.S. at 624 (remanding for consideration of innocence in light of narrowed interpretation of statute), the record forecloses an actual innocence claim regarding the gun possession charge for the same reason Petitioner was not prejudiced by the *Rehaif* error: the record reflects (and Petitioner does not dispute) that he likely knew he had previously been convicted of a crime punishable by more than one year in prison when he possessed the firearms and therefore was not actually innocent of the narrowed offense.

## D.    Ineffective Assistance of Counsel

Petitioner also asserts his attorneys provided ineffective assistance in failing to present evidence of his innocence and failing to challenge several issues before Petitioner's guilty plea.  For example, Petitioner alleges problems with the grand jury process and that counsel failed to challenge the authenticity of the evidence used to prosecute and convict. (ECF No. 289 at 8).  Petitioner presents no evidence to support his allegations of procedural irregularities or to cast doubt on the authenticity of any evidence the Government would have presented.  Given the nature and quantity of the evidence the Government obtained, none of the potential objections or decisions of counsel can reasonably be viewed as sufficient to alter Petitioner's plea assessment.  The record lacks any evidence to suggest that Petitioner's attorneys acted unreasonably or that he would have chosen not to plead guilty and to opt for a trial if his attorneys made different choices or provided different advice.

18

To the extent that Petitioner intended to assert that counsel was ineffective for failing to present additional Fourth Amendment challenges, including as to the 2014 traffic stop or to the January 2016 arrest warrant, the claims fail.  A review of the record does not support Petitioner's new probable cause challenges.  Given all the other evidence regarding Petitioner's activities and the conduct of his coconspirators revealed by law enforcement's investigation, neither (1) the undisclosed criminal activities of one of the confidential informants, (2) Petitioner's assertions about the audio recording of one transaction, nor (3) the lack of field tests on certain drug quantities and the timing of the lab tests, were sufficient to undermine the probable cause supporting the searches and arrest.  Counsel was therefore not deficient for failing to raise the additional challenges in seeking to suppress certain evidence, and Petitioner was not prejudiced as a result of counsel's decisions.

Petitioner's filings could also be construed to assert that counsel insufficiently challenged a two point sentencing guideline enhancement for the use of violence during the crime, (ECF No. 289-1 at 5–6), and unreasonably declined to challenge a sentencing guideline enhancement for being a career offender and armed career criminal.  (ECF Nos. 286, 286-2, 289 at 7–8).  Petitioner has not shown that the Court made any error on either guideline issue, but more importantly, Petitioner cannot show that counsel's decisions were deficient or that he suffered any prejudice because neither issue had any impact on his sentence.

The U.S.S.G. § 4B1.1 career offender enhancement and U.S.S.G. § 4B1.4 armed career criminal enhancement did not impact Petitioner's guideline range because the

provisions set alternative minimum adjusted offense levels, and Petitioner's adjusted offense level based on the drug quantity and other conduct was already higher than the level provided by those guideline provisions.  (Presentence Investigation Report ¶¶ 18–19.)  Likewise, the U.S.S.G. § 2D1.1(b)(2) two-level enhancement for the use of violence during the offense increased Petitioner's adjusted offense level from fifty to fifty-two, but because the total offense level was capped at 43, that issue had no impact on his guideline range.  (*Id.* ¶¶ 30, 40.)  Furthermore, the Court noted at sentencing that in reality it was the 300-month ceiling in the plea agreement (which counsel negotiated) that set the upper bound on his sentence, not the guideline range, and that without the agreed-upon ceiling, the Court would have imposed an even longer sentence.  (Sentencing Transcript at 38; ECF No. 242.)  For those reasons, counsel cannot be faulted for declining to press the guideline issues further at sentencing and Petitioner was not prejudiced by counsel's decisions.

### CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases.  In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255.  I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### <u>NOTICE</u>

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district

court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 28th day of February, 2022.